## Case No. 13,924.

### The THOMAS KILEY.

[3 Ben. 228.] [1]

**District Court, E. D. New York. April, 1869.**

COLLISION—DAMAGES—EXCEPTIONS—DEMURRAGE— PRIVATE SALE OF CARGO.

1. Where a canal-boat, laden with coal, was sunk by a collision in the port of New York, and, after she was raised, her cargo was taken out and sold at private sale, without notice to the parties to be charged for the damages; and the boat was then taken to Elizabethport, N. J., to be repaired, where she was frozen in, so that she could not be repaired for over a month, and no sufficient reason was shown for taking her from New York to be repaired, and the commissioner, to whom it was referred to ascertain the damage, allowed demurrage for the whole time, and also an item of loss on the coal, and the claimants excepted to this report: Held, that the owners of the boat could not recover demurrage for all the time of the delay, but only for a period of time sufficient to complete the repairs, under ordinary circumstances.

[Cited in Johanssen v. The Eloina, 4 Fed. 574.]
[See The Baltic, Case No. 824.]

2. That the damage to the coal should have been ascertained by an appraisal, or by a sale upon notice; but, as it appeared that the cargo was, in fact, damaged, and that a sale at auction would probably have shown as much loss as was allowed, the court allowed the item to stand, marking its disapproval of the course pursued, by casting on the libellant the fees of witnesses called to prove that item.

This case came up upon exceptions to the commissioner's report. The action was brought to recover the damages occasioned to the libellants by the sinking of a canal-boat, laden with coal, in a collision, which occurred on the 17th of January, 1867, in the port of New York. It appeared that the vessel, with the coal on board, was raised on the 22d of January, and taken to the Atlantic docks. The coal was then taken out, and sold at private sale, the discharging occupying 2½ days. The boat was then taken to Elizabethport, New Jersey, to be repaired, and almost immediately, on her arrival there,

---

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

she was frozen in, so that she could not be put upon the ways until the 8th of March, when she was hauled out, and the repairs to her completed. The commissioner allowed the libellants demurrage, at the rate of $7 per day, for the whole period of 47½ days, to which allowance exception is taken. The commissioner also allowed $1.50 per ton for depreciation of the coal, by reason of the damages caused by the mud and water, to which exception was also taken.

BENEDICT, District Judge. As to the question of demurrage. I am of the opinion that the libellants are not entitled to recover demurrage for the period of detention caused by the fact that the boat was frozen in at Elizabethport, where she went to repair.

The collision occurred in the port of New York, where, as the evidence shows, the repairs could have been effected promptly, and without any risk of freezing up. It is not shown that the repairs could have been done more cheaply at Elizabethport than in New York, nor does it appear that that was the home port of the vessel, nor is any reason whatever suggested by the evidence for taking the boat to Elizabethport.

The taking of the boat, without any sufficient reason, to a port where she was in danger of being frozen up, and where she was, in fact, frozen up immediately upon her arrival, was an error on the part of the master of the canal-boat, for the consequences of which he alone is responsible. He cannot charge the respondents with a loss which the exercise of ordinary prudence on his part would have avoided.

The report must, therefore, be modified, by reducing the demurrage to a period of time sufficient to complete the repairs under ordinary circumstances. Any extra expense for taking the boat to Elizabethport must, for the same reason, be disallowed.

The next objection is to the allowance of $1.50 per ton, as the damage to the cargo of coal by mud and water. It appears that the damage was never appraised, and the coal was sold at private sale, in its damaged condition, without notice to the respondents, who were to be held responsible for the loss.

I disapprove of this mode of procedure. The damage to the coal should have been ascertained by a proper examination and appraisal, or by a sale upon notice to the respondents, or in some other way not open to the suspicions always attaching to a private sale of damaged property without notice. The allowance for this damage to the coal I permit to stand, simply because it appears affirmatively that the coal was wet and muddy, and I am of the opinion, looking at the whole evidence, that a sale at auction, on notice, would probably have shown as much loss as has been allowed; but I shall mark my disapproval of the course pursued, by casting upon the libellants the fees of the witnesses called to show the loss upon the

coal. Had the coal been sold on notice, the necessity of any witnesses would probably have been avoided.

If the amount to be decreed in accordance with this opinion is not agreed upon, let the case be sent to the commissioner, to reform the report in the particulars referred to.